**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM and BROCKTON CONTRIBUTORY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>DANIEL C. USTIAN, ROBERT C. LANNERT, MARK T. SCHWETSCHENAU, NAVISTAR INTERNATIONAL CORPORATION, and DELOITTE & TOUCHE LLP.<br><br>            Defendants. | No.  07 C 7014<br><br>Judge Robert W. Gettleman |
| KEVIN MEMOLI, Individually and On Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>      v.<br><br>NAVISTAR INTERNATIONAL CORPORATION, DANIEL C. USTIAN, ROBERT C. LANNERT, MARK T. SCHWETSCHENAU, and DELOITTE & TOUCHE LLP<br><br>            Defendants. | No.  08 C 107<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OF LAW IN SUPPORT OF
NORFOLK COUNTY RETIREMENT SYSTEM AND
BROCKTON CONTRIBUTORY RETIREMENT SYSTEM'S
MOTION FOR CONSOLIDATION, TO BE APPOINTED LEAD
PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

## INTRODUCTION

The Norfolk County Retirement System ("Norfolk") and Brockton Contributory Retirement System ("Brockton") (collectively, the "Massachusetts Retirement Systems") respectfully submit this memorandum of law pursuant to Fed. R. Civ. P. 42(a) and § 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a-mm (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(a), in support of its motion for an order: (a) consolidating the two above-captioned securities class actions and any subsequently-filed related actions (the "Action"); (b) appointing the Massachusetts Retirement Systems as Lead Plaintiff in the Action and in any consolidated related actions; and (c) approving the Massachusetts Retirement Systems' selection of Wolf Popper LLP ("Wolf Popper") and Robinson Curley & Clayton, P.C. ("Robinson Curley") as Co-Lead Counsel.

## PRELIMINARY STATEMENT

Pending before this court are two related securities class actions filed on behalf of purchasers of Navistar International Corporation ("Navistar" or the "Company") securities. These actions allege that the defendants violated Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC").

In class actions filed under the federal securities laws, the PSLRA requires that the court appoint as lead plaintiff the movant with the largest financial interest in the relief sought in the class action.  *See* 15 U.S.C. § 78u-4(a)(3).

The Massachusetts Retirement Systems have incurred losses totaling over $322,000 from purchases of Navistar publicly traded stock during the period February 14, 2003 through July 17, 2006, inclusive (the "Class Period").[1]  The Massachusetts Retirement Systems seek to be appointed lead plaintiff on behalf of a class of persons or entities, with certain exclusions, who purchased Navistar securities during the Class Period (the "Class").  The Massachusetts Retirement Systems are precisely the type of institutional investors that Congress sought to summon and empower when it enacted the PSLRA.  *See Ferrari v. Impath, Inc.,* No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. Jul. 15, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs).  Moreover, as institutional investors, the Massachusetts Retirement Systems are accustomed to acting as fiduciaries and their experience in legal and financial matters will substantially benefit the Class.  The Massachusetts Retirement Systems are believed to have the "largest financial interest" in the above-captioned related actions and are entitled to the presumption that they are the "most adequate plaintiff."

## PROCEDURAL HISTORY

On December 13, 2007 the Massachusetts Retirement Systems filed an action against Navistar, *Norfolk County Retirement System, et. al. v. Ustian, et. al.*, No. 07-7014, in the United States District Court for the Northern District of Illinois.  Since then, one related action has been

---

[1] The Massachusetts Retirement Systems' trading in Navistar publicly traded stock during the Class Period is disclosed in the respective Certifications of Norfolk and Brockton, attached as Exhibits A and B hereto.  The Massachusetts Retirement Systems' losses from trading in Navistar publicly traded stock total $322,340.26.  *See* Exhibit C hereto.  Plaintiffs realized in calculating their losses that each had inadvertently omitted one purchase occurring on July 17, 2006 from their certifications and that one purchase identified by Norfolk as occurring on July 14, 2005 actually occurred on July 14, 2006.

filed in this Court, *Memoli v. Navistar International Corp., et. al.*, No. 08-107.  The complaints

filed in each of these actions similarly allege violations of the Exchange Act on behalf of persons

and entities who purchased Navistar securities during the Class Period.  On January 28, 2008, the

Massachusetts Retirement Systems filed an Agreed Motion for Finding of Relatedness and

Consolidation.  By Order dated February 5, 2008, the motion was granted as to a finding of

relatedness and denied without prejudice as to consolidation.

The above-captioned actions each name Navistar and certain of Navistar's present and

former officers, including, Daniel C. Ustian ("Ustian"), Navistar's Chief Executive Officer and

Chairman, Robert C. Lannert ("Lannert"), Navistar's former Chief Financial Officer, and Mark

T. Schwetschenau ("Schwetschenau"), Navistar's former Senior Vice President and Controller

(collectively, the "Individual Defendants") and Navistar's former outside auditing firm, Deloitte

& Touche LLP.

## SUMMARY OF THE ALLEGATIONS[2]

Navistar is headquartered in this District, in Warrenville, Illinois.  Navistar, through its

subsidiary, International Truck and Engine Corporation, produces commercial truck, school bus,

and mid-range diesel engines.  The Company operates in three segments: Truck, Engine, and

Financial Services, each of which conducts business in the United States and abroad.

Navistar stock traded on the New York Stock Exchange during the Class Period but was

delisted and began trading on the over-the-counter market on February 14, 2007.

---

[2]  The allegations described herein are derived from the complaint filed in *Norfolk County Retirement System, et. al., v. Ustian, et. al.*, No. 07-7014.

During the Class Period, Navistar issued quarterly earnings releases that indicated that the

Company was either meeting or beating analyst expectations and/or Navistar's own previous

guidance for each quarter.  Each earnings release touted Navistar as becoming a more profitable

company.  Despite Navistar's positive reports, the Company's internal controls over financial

reporting had material weaknesses, which caused misapplications of generally accepted

accounting principles ("GAAP").  Further, the material control weaknesses allowed defendants to

engage in intentional misconduct, resulting in material misstatements of Navistar's Class Period

financial results.

On December 14, 2005, Navistar reported that it would be postponing its shareholder and

analyst meeting scheduled for that day because the external audit for fiscal year 2005 had not

been completed.  With this announcement, Navistar's shares fell $2.11 to $28.17 per share on

volume of approximately 3.1 million shares.  A month later, on January 17, 2006, Navistar

disclosed that it would miss its 2005 Form 10-K filing deadline, blaming the delay on "an

unexpected, extended medical leave" taken by "a key member of" the team from its external

auditors, Deloitte & Touche LLP ("Deloitte").  On April 7, 2006, Navistar admitted that it would

be restating its financial results for the fiscal years 2002 through 2004 and the first three quarters

of fiscal 2005.  On July 17, 2006, Moody's Investors Service issued a press release notifying

investors that it was withdrawing its ratings of Navistar "due to its belief that it lacks adequate

financial information to maintain a rating."  By July 17, 2006, shares of Navistar publicly-traded

stock had fallen an additional $7.22 to $20.95 per share since the Company had first disclosed

that it was postponing the shareholder and analyst meeting scheduled for December 14, 2005.

More than a year and a half later, on October 25, 2007, Navistar finally released

preliminary results of total pretax restated adjustments of negative $1,120,000,000 ($1.12 billion)

from its previously reported financial results for the fiscal years 2002 through 2004 and the first

three quarters of fiscal 2005.  The Company also admitted that it had identified material

weaknesses in its internal controls over financial reporting and that an independent law firm had

found "instances of intentional misconduct" resulting in material restatement adjustments.

## ARGUMENT

**I.    THE TWO RELATED ACTIONS PENDING IN THIS COURT
SHOULD BE CONSOLIDATED PURSUANT TO FED. R. CIV. P. 42(a)**

Consolidation of actions is governed by Fed. R. Civ. P. 42(a), which states:

> If actions before the court involve a common question of law or fact, the court may:
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

Consolidation pursuant to Rule 42(a) is proper when actions involve a common question

of law and fact.  *Manual for Complex Litigation (Fourth)*, § 20.11 (2004).  *See also Johnson v.*

*Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  Similarly, Section 21(D)(a)(3)(B)(ii) of the

PSLRA contemplates the consolidation of multiple actions "asserting substantially the same

claim or claims."  15 U.S.C. § 78u-4(a)(3)(B)(ii).

Consolidation is particularly appropriate here.  Both of the above-captioned actions are

based on substantially similar factual allegations, make substantially similar legal claims and

seek to represent a class of purchasers of Navistar securities from February 14, 2003 through July

17, 2006, inclusive.  As a result, consolidation will serve to avoid duplicative discovery, motion

practice and other proceedings.  Moreover, as reflected in the Agreed Motion for Finding of

Relatedness and For Consolidation, all of the parties in both of the above-captioned actions have already agreed to consolidation.

## II.    THE MASSACHUSETTS RETIREMENT SYSTEMS SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The Massachusetts Retirement Systems Have Satisfied The Procedural Requirements Of The PSLRA

Plaintiffs commencing securities class actions must publish a notice to the class, within twenty days of filing the action, informing class members of the pendency of the action and their right to file a motion for appointment as Lead Plaintiff.  *See* PSLRA § 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i).  Within sixty days after that publication, any person or entity who is a member of the proposed class may apply to the Court to be appointed as Lead Plaintiff.  *Id.*

On December 17, 2007, the initial notice of the pendency of the *Norfolk County Retirement System* action was published over *PR Newswire* and circulated nationally.[3]  A copy of that notice is attached hereto as Exhibit D.  Sixty days from December 17, 2007, is Friday, February 15, 2007.  This motion is thus timely filed on February 15, 2008.

### B.    The Massachusetts Retirement Systems Are The "Most Adequate Plaintiff"

The PSLRA mandates that, not more than ninety days after publication of the initial notice of pendency, a court shall consider any motion made by any class member, and appoint as

---

[3] *PR Newswire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service."  *See Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997) (Coar, J.); *In re USEC Sec. Litig.,* 168 F. Supp. 2d 560, 567 (D. Md. 2001); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

Lead Plaintiff the member or members of the class that it determines to be most capable of

adequately representing the interests of class members. *See* PSLRA § 21D(a)(3)(B),

15 U.S.C. § 78u-4(a)(3)(B). Under the PSLRA, such persons are referred to as the "most

adequate plaintiff." *Id.*

The statute dictates that courts must presume that the most adequate plaintiff is the person

or group of persons that has filed a complaint or made a motion in response to a notice, is

determined by the court to have the largest financial stake in the relief sought in the class action,

and otherwise satisfies Rule 23 of the Federal Rules of Civil Procedure. *See* PSLRA

§ 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Topaz Realty v. Northfield*

*Labs., Inc.*, No. 06 C 1493, 2006 U.S. Dist. LEXIS 77613, at *9 (N.D. Ill. Jun. 19, 2006);

*Charles Dechter Family Trust v. Anicom, Inc.*, No. 00 C 4391, 2000 U.S. Dist. LEXIS 14949, at

*2-*3 (N.D. Ill. Oct. 3, 2000); *see Lax v. First Merchants Acceptance Corp.*, No. 97 C 2716,

1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997). The Massachusetts Retirement

Systems are entitled to this presumption and are demonstrably the most adequate plaintiffs.

**1.    The Massachusetts Retirement Systems Have Made**
**A Timely Motion For Appointment As Lead Plaintiff**

The Massachusetts Retirement Systems have fulfilled the first prong of the statutory test

by filing a timely motion to be appointed lead plaintiff. That motion is supported by the

Certifications of Joseph Connolly, Chairman of Norfolk and Harold (Hal) P. Hanna, Jr.,

Executive Director of Brockton, attesting to the fact that the Massachusetts Retirement Systems

authorized the filing of the Complaint in this action, and of their willingness to serve as

representatives on behalf of the Class.   *See* Exhibits A and B hereto.  Therefore this element is

satisfied.

### 2.    The Massachusetts Retirement Systems are Precisely the Type of Lead Plaintiff Congress Envisioned When it Enacted the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage

large, organized institutional investors to play a more prominent role in securities class actions.

*See* H.R. CONF. REP. NO. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 733

("The Conference Committee believes that increasing the role of institutional investors in class

actions will ultimately benefit shareholders and assist courts by improving the quality of

representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have

a large financial stake in the outcome of the litigation, would be beneficial because institutional

investors with a large financial stake are more apt to manage complex securities litigation

effectively.  Brockton and Norfolk, as institutional investors, are precisely the type of lead

plaintiffs Congress envisioned when it passed the PSLRA.  *See id.*

### 3.    The Massachusetts Retirement Systems Have The Largest Financial Interest

The second prong of the test for the "most adequate plaintiff" requires the proposed lead

plaintiff to demonstrate that it has the largest financial interest in the relief sought by the class.

In determining which movant has the largest financial interest, the Court should examine

(1) the number of shares that the movant purchased during the putative class period; (2) the

number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class

period; and (4) the approximate losses suffered by the plaintiffs.  *Lax v. First Merchants*

*Acceptance Corp.,* 1997 U.S. Dist. LEXIS 11866, at *17; *see In re Cendant Corp. Sec. Litig.,* 264 F.3d 201, 262 (3d Cir. 2001) (approving the *Lax* four-part test).

Plaintiff Norfolk County Retirement System acquired 38,600 shares of Navistar publicly traded stock during the Class Period, at an aggregate cost of $1,445,401, sustaining a loss of $164,805.17 on those publicly traded stock transactions.  Plaintiff Brockton Contributory Retirement System acquired 18,200 shares during the Class Period, at a cost of $647,235.08, sustaining a loss of $157,535 as a result of those transactions.  The losses of both Norfolk and Brockton are calculated by applying the sum of (1) proceeds from Class Period sales of Navistar common stock and (2) the product of (a) the average per share closing price during the 90-day period following the last day of the Class Period ($24.07) and (b) the number of net shares purchased during the Class Period and held as of July 18, 2006, against the aggregate cost of shares purchased during the Class Period.

The Massachusetts Retirement Systems' combined losses from purchases of Navistar securities during the Class Period total of $322,340.26.  A chart quantifying The Massachusetts Retirement Systems' losses is attached as Exhibit C hereto.[4]

The Massachusetts Retirement Systems believe that their losses of over $322,000 provide them with the largest financial interest in the prosecution of this litigation, and that they are the "most adequate plaintiff" to represent the Class.  *See Charles Dechter Family Trust*, 2000 U.S.

---

[4]  Applying a "FIFO" methodology to the Massachusetts Retirement Systems' trading would produce a different result.  Due to the fact that as of the first day of the Class Period (February 13, 2003) Norfolk held 7,900 shares of Navistar common stock, application of a first-in-first-out (FIFO) methodology to Norfolk's trading increases Norfolk's losses to $285,285.72.  Brockton held no shares of Navistar as of February 13, 2003, so the application of FIFO to its trading does not alter its losses.  The Massachusetts Retirement Systems' combined FIFO loss is thus $442,820.81.

Dist. LEXIS 14949 at *4 (appointing the movant with the largest loss as the lead plaintiff and

approving its selection of lead counsel); *Lax*, 1997 U.S. Dist. LEXIS 11866, at *25-*26 (same).

### 4.    The Massachusetts Retirement Systems Satisfy Rule 23

In addition to the aforementioned requirements, PSLRA § 21D(a)(3)(B)(iii)(I)(cc)

dictates that the proposed Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23

of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  For purposes of

a motion for appointment of lead plaintiff, a movant need only make a preliminary showing that

he or she satisfies Rule 23.  *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 135 n.9

(S.D.N.Y. 2007); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal.

1999); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 64 (D. Mass. 1996).

Of the prerequisites to class certification set forth in Rule 23, only the typicality and

adequacy prongs are implicated in any consideration of the "most adequate plaintiff."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  This is clear from Section 21D(a)(3)(B)(iii)(II), which

provides that the presumption in favor of the most adequate plaintiff may be rebutted only upon

proof that this individual or group will not adequately protect the interests of the class or is

subject to unique defenses.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Consequently, in deciding a

motion for appointment of Lead Plaintiff, inquiry should be limited to the typicality and

adequacy prongs of Rule 23(a).  *See Mayo v. Apropos Tech. Inc.,* No. 01-8406, 2002 U.S. Dist.

LEXIS 1924, at *12  (N.D. Ill. Feb. 6, 2002) (noting that typicality and adequacy are the only

relevant prerequisites to lead plaintiff selection) (citing *Lax,* 1997 U.S. Dist. LEXIS 11866,

at *6).

####     a.       The Massachusetts Retirement Systems
####              Fulfill The Typicality Requirement

The typicality requirement of Rule 23(a)(3) is satisfied when the lead plaintiff's claims

arise from the same course of events and each class member makes similar arguments to prove

the defendants' liability.  *See McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, No. 05 C 0760,

2006 U.S. Dist. LEXIS 10531, at *10 (N.D. Ill. Mar. 13, 2006) (Gettleman, J.), (*citing Keele v.

Wexler*, 149 F.3d 589, 595 (7th Cir. 1998); *Kort v. Diversified Collections Servs., Inc.*,

No. 01 C 0689, 2001 U.S. Dist. LEXIS 20988, at *7-*8 (N.D. Ill. Dec. 17, 2001)); *In re Drexel*

*Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *In re Oxford Health Plans Sec.*

*Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

The Massachusetts Retirement Systems seek to represent a Class of persons who

purchased Navistar securities at artificially inflated prices during the Class Period and were

damaged thereby.  The Massachusetts Retirement Systems satisfy the typicality requirement

because they: (i) purchased Navistar securities during the Class Period at prices that were

artificially inflated as a result of the materially false omissions and misleading statements caused

to be issued by the defendants; and (ii) suffered damages thereby.  The claims asserted by the

Massachusetts Retirement Systems "arise from the same event, practice, or course of conduct

that gives rise to the claims of the other class members, and the claims are based on the same

legal theory" and the Massachusetts Retirement Systems are not subject to any unique defenses.

*McFadden*, 2006 U.S. Dist. LEXIS 10531, at *10 (*citing Keele*, 149 F.3d at 595 and *Kort*, 2001

U.S. Dist. LEXIS 20988, at *7-*8).

**b.      The Massachusetts Retirement Systems
Fulfill The Adequacy Requirement**

Section 21D of the PSLRA directs the Court to limit its inquiry under the adequacy prong

to the existence of any conflicts between the interests of the proposed representative and the

members of the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the interests of the Massachusetts Retirement Systems are clearly aligned with the

members of the Class; there is no evidence of any antagonism between their interests and the

Class.  As detailed above, the Massachusetts Retirement Systems share virtually identical

questions of law and fact with the members of the Class; and their claims are typical of the

claims of other Class members.  The Massachusetts Retirement Systems have filed the initial

complaint in this action and submitted Certifications attesting to their willingness and ability to

discharge the responsibilities of a lead plaintiff.  *See* Exhibits A and B hereto.  Norfolk and

Brockton have ably worked jointly as lead plaintiff before, as they currently serve as lead

plaintiff in *City of Brockton Retirement System v. The Shaw Group*, No. 06-cv-8245 (CM), a

securities class action pursuant to the PSLRA pending in the Southern District of New York.  In

addition, both are pension systems for retirees in metropolitan Boston and are members of the

Massachusetts Public Retirement Administration Commission.

The Massachusetts Retirement Systems are victims of the same fraud as all other Class

members.  To further their own interests, the systems will necessarily have to advance the

interests of all Class members.  These facts amply demonstrate that the Massachusetts

Retirement Systems will adequately represent the interests of Class members.

**III.   THE COURT SHOULD APPROVE THE MASSACHUSETTS
RETIREMENT SYSTEMS' CHOICE OF COUNSEL**

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel, subject to

court approval.  *See* PSLRA Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v).  Consistent

with congressional intent, a court should not disturb the Lead Plaintiff's choice of counsel, unless

doing so is "necessary to protect the interest of the plaintiff class."  *See* Statement of Managers --

The "Private Securities Litigation Reform Act of 1995," 141 CONG. REC. H13691-08, at H13700,

H. R. CONF. RPT. NO. 104-369, at 62, (1995) *as reprinted in* 1995 U.S.C.C.A.N. 730, 732.  The

Massachusetts Retirement Systems have selected Wolf Popper and Robinson Curley & Clayton

as co-lead counsel.  Both Wolf Popper and Robinson Curley have been highly successful in

prosecuting securities fraud class actions and other complex commercial litigation, as outlined in

their resumes annexed as Exhibits E and F hereto.  Thus, the Court may be assured that by

granting this motion, the members of the Class will receive the highest caliber legal

representation available.

## CONCLUSION

For all of the foregoing reasons, The Massachusetts Retirement Systems respectfully

request that their motion for (1) consolidation of the above referenced actions, and (2)

appointment as Lead Plaintiff be granted, and (3) that their selection of Wolf Popper and

Robinson Curley as co-lead counsel for the Class be approved by the Court.

Dated: February 15, 2008

                                   Respectfully submitted,

**NORFOLK COUNTY RETIREMENT SYSTEM and BROCKTON CONTRIBUTORY RETIREMENT SYSTEM**

Dated:  February 15, 2008                       s/ Lester L. Levy
                                       One of Their Attorneys

Lester L. Levy (admitted *Pro Hac Vice)*
James A. Harrod
E. Elizabeth Ferguson
Natalie M. Mackiel-Jackson
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
(212) 759-4600 – Telephone
(212) 486-2093 – Facsimile

C. Philip Curley
Fay Clayton
Aleeza Strubel
Michael J. O'Donnell
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100 – Telephone
(312) 663-0303 – Facsimile

*Attorneys for The Massachusetts Retirement*
*Systems and Proposed Co-Lead Counsel for the Class*

Doc. 159771                                     -14-

**CERTIFICATE OF SERVICE**

   I hereby certify that on February 15, 2008, I caused to be electronically filed the foregoing **Memorandum of Law In Support of Norfolk County Retirement System and Brockton Contributory Retirement System's Motion For Consolidation, To Be Appointed Lead Plaintiff and For Approval of its Selection of Lead Counsel,** with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

Laurence H. Levine
Maaike S. Almeida
LAW OFFICES OF LAURENCE H.
LEVINE
190 South LaSalle Street, Suite 3120
Chicago, Illinois 60603
Telephone: (312) 291-7000
Facsimile: (312) 291-7015
laurence.levine@lhlevine.com
maaike.almeida.@lhlevine.com
  *Counsel for Defendants Daniel C.*
  *Ustian, Robert C. Lannert, Navistar*
  *International Corporation*

Sean M. Berkowitz
Cary R. Perlman
Mark S. Mester
Robin M. Hulshizer
Robert C. Levels
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Sean.berkowitz@lw.com
Cary.perlman@lw.com
mark.mester@lw.com
robin.hulshizer@lw.com
robert.levels@lw.com
  *Counsel for Defendants Daniel C.*
  *Ustian, Robert C. Lannert, Navistar*
  *International Corporation*

Patrick S. Coffey
Matthew S. Klepper
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 896-6702
pcoffey@lordbissell.com
mklepper@lordbissell.com
  *Counsel for Defendant Mark T.*
  *Schwetschenau*

James E. Barz
MAYER BROWN ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
jbarz@mayerbrownrowe.com
  *Counsel for Defendant Deloitte &*
  *Touche USA LLP*

Richard A. Maniskas
SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
rmaniskas@sbtklaw.com
  *Counsel for Kevin Memoli*

     s/ Lester L. Levy

Doc. 159771